UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MICHAEL C. SLAUGHTER, JR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHRISTOPHER RUTLEDGE, WILLIAM )<br>ENGLAND, OSF HOSPITAL, & CITY OF )<br>PEORIA )<br>)<br>Defendants. )<br>) | Case No. 1:17-cv-1463-JBM-JEH |

## **ORDER & OPINION**

The matter is before the Court on Defendants' Motions to Dismiss the Amended Complaint. (Docs. 22, 24, 27). The motions have been fully briefed. For the reasons stated below, the motions are GRANTED and this matter is DISMISSED WITH PREJUDICE.

### BACKGROUND

On September 30, 2016, Plaintiff filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 against OSF Healthcare System ("OSF") (incorrectly named OSF Hospital), the City of Peoria, the Peoria Police Department, Assistant State's Attorney Kim Nuss, OSF nurse Christopher Rutledge, and Peoria Police Officer William England. Plaintiff's claims arise out of an incident that occurred on January 14, 2017, at OSF Saint Francis Hospital in Peoria where Plaintiff was being treated in the emergency room for alcohol poisoning. (Doc. 1 at 5). While at OSF, Plaintiff was arrested for aggravated battery of Defendant Rutledge. *Id.* at 6-7. Plaintiff alleged that the

aggravated battery charge was fabricated and that Rutledge actually assaulted and/or battered Plaintiff. *Id.* at 5-7. Slaughter brought claims for "aggravated battery/assault/physical disfigurement" and false imprisonment against Rutledge; conspiracy and collusion against Rutledge, Officer England, and Assistant State's Attorney Nuss; and false arrest against Officer England.

On October 19, 2017, pursuant to 28 U.S.C. § 1915A, the Court issued a Merit Review Order dismissing Plaintiff's complaint entirely for failure to state a claim. (Doc. 5). As Plaintiff's battery, assault, and false imprisonment claims were all state law causes of action against a private party—and therefore could not serve as a basis for § 1983 liability—the Court analyzed whether Plaintiff had stated a § 1983 claim under theories of conspiracy or false arrest against Officer England, nurse Rutledge, and Assistant State's Attorney Nuss. *Id.* at 3.

The original complaint was extremely difficult to follow. As stated in the Merit Review Order, the Court found that Plaintiff's false arrest claim was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and that Plaintiff's conspiracy allegations were vague and conclusory. *Id.* at 4-5. The Court granted Plaintiff 30 days to file an amended complaint and specified as follows: "Plaintiff's amended complaint will replace Plaintiff's original complaint in its entirety. Accordingly, the amended complaint must contain all allegations against all Defendants. Piecemeal amendments are not accepted." *Id.* at 6 (emphasis added).[1]

---

[1] The Court also notified Plaintiff that the Peoria Police Department was not a suable entity apart from the City of Peoria. *Id.* at 6 n. 1.

Plaintiff filed an amended complaint on November 15, 2017, omitting Assistant State's Attorney Nuss and the Peoria Police Department as Defendants. (Doc. 6). The amended complaint provided some clarity. Plaintiff alleges that nurse Rutledge and Officer England conspired against him in that they falsely arrested Plaintiff for battering nurse Rutledge, even though nurse Rutledge was the initial aggressor. Plaintiff contends that the fabricated battery charge was used as blackmail to force Plaintiff into accepting a stiffer plea and sentence in an unrelated forgery case. Plaintiff claims that video evidence from OSF proves his innocence on the battery charge.

All Defendants filed motions to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docs. 22, 24, 27) and Slaughter responded to each motion (Docs. 30, 31, 32). As will be shown below, Plaintiff's amended complaint suffers from the same deficiencies as his original complaint, and his amended complaint must be dismissed because Slaughter fails to state a claim under 42 U.S.C. § 1983.

**LEGAL STANDARD**

In ruling on a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient detail to give defendant notice of the claim, and the allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard requires enough facts to "present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## DISCUSSION

The Court will first address OSF's motion to dismiss. (Doc. 22). Section 1983 imposes liability when a defendant acts under color of state law and violates a plaintiff's rights under the Constitution or laws of the United States. 42 U.S.C. § 1983. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.'" *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir.1996), *cert. denied*, 520 U.S. 1230 (1997) (quoting *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir.1994), *cert. denied*, 513 U.S. 1128 (1995)). As such, the doctrine of *respondeat superior* does not apply to § 1983 actions; employers or supervisors may be held liable only if they caused or participated in the alleged constitutional violation. *Hahn v. Walsh*, 762 F.3d 617, 638-39 (7th Cir. 2014).

4

OSF argues that it must be dismissed because the amended complaint only mentions OSF as Rutledge's employer, and therefore fails to attribute any conduct directly to OSF that would subject it to liability for the deprivation of Slaughter's constitutional rights. The Court agrees. In the "Statement of the Claim" portion of Slaughter's amended complaint, Slaughter does not mention OSF at all. It is obvious he lists OSF as a defendant only because the alleged incident occurred at OSF and because defendant Rutledge, who is alleged to have violated Slaughter's constitutional rights, was employed there.

In his response, Plaintiff incorrectly claims that "OSF is liable for Rutledge while he is on duty at OSF." (Doc. 30 at 1). This is incorrect, as liability under § 1983 cannot be predicated on a theory of *respondeat superior*. Plaintiff also attempts to argue in his response that other OSF staff, such as the security guard on duty and E.R. personnel and supervisors, should have intervened to stop Rutledge's conduct. Even assuming that other OSF staff members should have intervened in the alleged incident, § 1983 liability would still not attach to OSF as the staff members' employer.

> "Supervisory liability will be found . . . if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Lanigan*, 110 F.3d at 477 (citations omitted). That is, "to be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct." *Id*. (citations omitted). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable.... The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference."

*Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Slaughter has not brought suit against any individual supervisors at OSF, nor has he alleged with the requisite specificity that any supervisors facilitated, approved, condoned, or ignored

5

unconstitutional conduct on Rutledge's behalf. The Court GRANTS OSF's Motion to dismiss (Doc. 22) and OSF Healthcare System (incorrectly named OSF Hospital) is DISMISED WITH PREJUDICE from this action.

The Court will next analyze the remaining two motions to dismiss collectively, the first motion brought by nurse Rutledge and the second brought by the City of Peoria and Officer England. Slaughter contends that Officer England and Rutledge conspired to falsely arrest him for a fabricated aggravated battery charge. He alleges that the baseless aggravated battery charge was used to blackmail him into taking a stiffer plea agreement in a separate and unrelated forgery case.

To establish § 1983 liability through a conspiracy theory, "a plaintiff must demonstrate that: (1) a state official and a private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Lewis v. Miller*, 677 F.3d 324, 333 (7th Cir. 2012) (citations omitted). "Vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's burden[;] a complaint must contain factual allegations suggesting that the defendants reached a meeting of the minds." *Evers v. Reak*, 21 F.App'x 447, 450 (7th Cir. 2001) (citing *Amundsen v. Chi. Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000)). A Plaintiff must allege the "what, when, why, and how" "of the defendants' supposed agreement to deprive him of his constitutional rights." *Id*. Slaughter has failed to allege such details.

Slaughter states that "nurse Christopher Rutledge and Peoria Police Officer William England committed collusion (a conspiracy against me) and I was falsely

6

arrested and technically blackmailed into a stiffer plea agreement on a different charge, in a different case in order to nullify the false charge of aggravated battery on Rutledge". (Doc. 6 at 5). Merely asserting that a conspiracy existed does not fulfill Slaughter's burden, *see Evers*, 21 F.App'x at 450, and "mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him" is not enough. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). Furthermore, Slaughter specifically alleges that "Rutledge had England falsely arrest me by lieing [sic] that I hit him (Rutledge) several times and chased him into an exam room". (Doc. 6 at 5). This suggests that Officer England was not involved in a conspiracy at all; to the contrary, such allegations suggest that Officer England arrested Slaughter for battery on— unbeknownst to him—the basis of false information, but not in furtherance of a conspiracy. Slaughter has been given two chances to plead a factual basis for his conspiracy claim, but both attempts have failed to allege any facts suggesting the meeting of the minds necessary to establish his claim. *See Tarkoski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1208 (7th Cir. 1980) ("Although plaintiff is pleading pro se, we believe that even a pro se litigant is required to allege something in the way of facts before his allegations of conspiracy may be deemed to state a claim."). The Court believes giving Slaughter a third chance to plead his conspiracy claim would be futile, and Defendant Rutledge is therefore DISMISSED WITH PREJUDICE from this action. *See Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004) (leave to file shall be given freely when justice so requires unless, *inter alia*, amendment would be futile).

Slaughter's only remaining claim is one for false arrest against Officer England. Officer England and the City of Peoria argue that Slaughter's false arrest claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under the well-known *Heck* doctrine, a plaintiff who has been convicted of a crime cannot seek damages under § 1983 for harm "caused by actions whose unlawfulness would render a conviction or sentence invalid". *Id.* at 486-87. As will be demonstrated below, under the circumstances of this particular case, the issue of whether *Heck* bars Slaughter's false arrest claim is quite complex.

Slaughter's § 1983 false arrest claim purports to be challenging an aggravated battery charge that was ultimately dismissed. If that were simply all Slaughter was attempting to do and if he were only demanding money damages, the Court could easily conclude that *Heck* would not bar such an action. *See Butler v. Compton*, 482 F.3d 1277 (10th Cir. 2007)**.** *Heck*'s bar only applies to convictions, and Slaughter was never convicted of aggravated battery. *See Wallace v. Kato*, 549 U.S. 384, 394 (2007) (*Heck* requires dismissal of a civil suit that would impugn a conviction; otherwise, the civil action can proceed absent some other bar to suit). But that is not all Slaughter is attempting to do via the present lawsuit. He claims that the Defendants, in concert, used the fabricated battery charge to blackmail him into pleading guilty and accepting a stiffer sentence in an unrelated forgery charge. In substance, he is arguing that his forgery guilty plea was involuntary and he explicitly requests that his sentence on his forgery conviction be reduced. In other words, while his lawsuit purports to challenge a dismissed aggravated battery charge, Slaughter's arguments and the remedy requested essentially challenge his underlying conviction and

8

sentence for forgery—a conviction that has not been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus". *See Heck*, 512 U.S. at 487.

The *Heck* doctrine grew out of two very important Supreme Court cases before it. In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), a group of state prisoners filed a § 1983 lawsuit challenging their deprivation of good-conduct-time credits as a result of prison disciplinary proceedings. The Supreme Court was tasked with deciding whether § 1983 was available to the respondents, or whether habeas corpus was their exclusive remedy. *Id.* at 477. The Court held that § 1983 actions do not encompass lawsuits that lie "within the core of habeas corpus." *Id.* at 487. The "core of habeas corpus" was defined as a challenge to "the fact or duration of . . . confinement" that seeks either "immediate release from prison" or the "shortening" of his term of confinement. *Id.* at 482, 487-89. Thus, an action for the restoration of good-time credits which demands release or a shorter period of duration could not be brought under § 1983. *Id.* at 500.

The Supreme Court decided *Wolff v. McDonnell*, 418 U.S. 539 (1974), shortly after *Preiser*. There, a state prisoner on behalf of himself and other inmates filed a § 1983 complaint challenging several of the practices, rules, and regulations where he was incarcerated. *Id.* at 542. Respondent argued, *inter alia*, that certain proceedings which might result in the taking of good time violated the Due Process Clause of the Fourteenth Amendment. *Id.* at 553. The *Wolff* Court held that respondent's request for restoration of good-time credits was foreclosed by *Preiser*, but that respondent's

lawsuit could proceed to determine the validity of the procedures themselves "short of ordering the actual restoration of good time already canceled." *Id.* at 555.

Many years later, the Court decided *Heck v. Humphrey*, 512 U.S. 477 (1994), where a prisoner sought not immediate or speedier release, but monetary damages in a § 1983 suit. Roy Heck, who was serving time for a voluntary manslaughter conviction in Indiana, argued that two state prosecutors and an investigator conducted an arbitrary investigation into his case and destroyed exculpatory evidence. *Id.* at 478-79. Heck's action was dismissed. *Id.* at 490. The Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit

*Id.* at 486–87.

The Supreme Court has since further expounded on *Heck*. In *Edwards v. Balisok*, 520 U.S. 641, 643 (1997), a prisoner again challenged the procedures used in his disciplinary proceedings as unconstitutional, and he "requested a declaration that the procedures employed by state officials violated due process, compensatory and

punitive damages for use of the unconstitutional procedures, an injunction to prevent future violations, and any other relief the court deems just and equitable." Balisok did not request restoration of good time credits. *Id.* at 643-44. Even so, the Court held that Balisok's claim was *Heck*-barred because "[t]he principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." *Id.* at 646. Balisok's claim was that he was completely denied the opportunity to put on a defense—an obvious procedural defect for which state and federal courts have reinstated good-time credits when it is established. *Id.* at 647. He also claimed that exculpatory evidence was excluded due to the deceit and bias of the hearing officer, and as the Court noted, "[a] criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him." *Id.* at 647. Therefore, Balisok's suit was not cognizable under § 1983 because it implied the invalidity of the punishment imposed on him. *Id.* at 648.

And in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), the Supreme Court summed up the holdings of *Preiser*, *Wolff*, *Heck* and *Balisok*:

> These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—**no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit** (state conduct leading to conviction or internal prison proceedings)—**if success in that action would necessarily demonstrate the invalidity of confinement or its duration**.

(emphasis added).

*Balisok* and *Wilkinson* teach us that the substance of a particular prisoner's § 1983 suit must be closely examined in order to determine whether success would imply the invalidity of an underlying conviction or sentence. That is to say, "no matter

11

the relief sought," "no matter the target of the prisoner's suit," the key question is whether success in the action would necessarily demonstrate the invalidity of confinement or its duration. *See Okoro v. Callagan*, 324 F.3d 488, 490 (7th Cir. 2003) ("It is irrelevant that [plaintiff][] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit."); *Burd v. Sessler*, 702 F.3d 429, 433 (7th Cir. 2012) (noting that the *Heck*-"bar requires us to evaluate the substantive requirements for obtaining the particular remedy—damages—that [the plaintiff][] seeks on his . . . claim). Slaughter claims that Rutledge and Officer England conspired to falsely arrest him and blackmail him into pleading guilty in an unrelated forgery case. He states that he pleaded guilty because he "believed that the metaphorical deck was stacked against [him]" and that he would not receive a fair trial. (Doc. 6 at 5-7). Of course, if Slaughter's guilty plea was entered involuntarily, then his conviction would be invalid. *See Warren v. Baenen*, 712 F.3d 1090, 1102 (7th Cir. 2013) ("To survive a due process challenge, a plea must be knowing, voluntary, and intelligently entered."). Slaughter also requests that his sentence on forgery be reduced. This kind of remedy is specifically foreclosed by *Preiser*.

The Tenth Circuit case *Butler v. Compton*, 482 F.3d 1277 (10th Cir. 2007), has facts very similar to this one. There, Butler pleaded guilty to three counts of burglary in exchange for dismissal of other unrelated burglary charges. *Id.* at 1278. Butler then filed a § 1983 action related to the dismissed burglary charges for alleged Fourth Amendment violations. *Id.* The Tenth Circuit held that Butler's § 1983 claims were not *Heck*-barred because his § 1983 challenge to the dismissed charges would not

implicate his underlying convictions or sentence on the other unrelated burglary charges. *Id.* at 1279-80. The Seventh Circuit has similarly held that *Heck* does not bar § 1983 suits alleging Fourth Amendment violations where such a challenge does not implicate an underlying conviction or sentence. *See Hill v. Murphy*, 785 F.3d 242, 245 (7th Cir. 2015).

But the substance of Slaughter's case is different from that in *Butler*. Butler only requested monetary and punitive damages; Slaughter requests that his current sentence for forgery be reduced, in addition to monetary damages. Butler's allegations in no way implied the invalidity of his guilty plea on the other unrelated burglary charges; Slaughter strongly contends that his guilty plea was involuntary, *i.e.*, that he was blackmailed into taking the plea. *Heck* prevents Slaughter from alleging any violation with regard to his valid forgery conviction that would imply its invalidity until that conviction has been reversed, expunged, declared invalid, or called into question.

The Second Circuit's decision in *Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014), lends further support. Poventud was convicted of attempted murder, but he successfully brought a state collateral challenge to his conviction based on *Brady v. Maryland*, 373 U.S. 83 (1963). *Poventud*, 750 F.3d at 124. His conviction was vacated and a new trial was ordered. *Id.* While the State weighed appealing the *Brady* decision, Poventud pleaded guilty to a lesser charge of attempted robbery pursuant to a plea agreement that dismissed all other charges and stipulated to a one-year sentence. *Id.* Thereafter, Poventud sued the City of New York under § 1983; his

13

arguments were centered on the state court determination that he was denied access to material evidence under *Brady*. *Id*.

In analyzing Poventud's *Brady* claim, the Second Circuit initially noted that "his claim must relate to his 1998 conviction and not to the 2006 [guilty plea] conviction." *Id.* at 136. It also stated that Poventud could not seek damages for the time he served pursuant to his plea agreement. *Id*. The Court then held that Poventud stated a valid § 1983 claim because his complaint "alleged deficiencies in his 1998 trial that are entirely independent of the proceedings related to his 2006 plea." *Id*. The Second Circuit specifically noted that Poventud's complaint "does not challenge the conviction pursuant to which the State continues to view him as a felon. The 2006 conviction is a 'clean' conviction, untainted by the *Brady* violation associated with the 1998 conviction." *Id*. Lastly, the Court pointed out that Poventud's complaint sought damages for his time in prison, but excluded the time that he served pursuant to his unchallenged 2006 guilty plea. *Id.* at 137. The Second Circuit remanded to the district court to determine "[t]he extent of Poventud's damages stemming from the *Brady* violation that do not call into question the validity of his 2006 guilty plea". *Id*.

Slaughter's arguments are not consistent with his guilty plea. His arguments and allegations concerning the dismissed aggravated battery charge are closely intertwined with his guilty plea, and he seeks damages and a reduced sentence on a sentence he is currently serving pursuant to his guilty plea. Slaughter's arguments concerning his dismissed battery charge are not presented entirely independent of

14

the proceedings related to his guilty plea.² Success in Slaughter's action would necessarily imply the invalidity of his forgery conviction and sentence. *See Sanchez-Figueroa v. Bergmann*, No. 15-560, 2015 WL 4365495, *3 (S.D. Ill. July 15, 2015) (even though Plaintiff only requested money damages, his claims directly challenged the validity of his guilty plea and were therefore *Heck*-barred). Slaughter's false arrest claim is therefore DISMISSED as *Heck*-barred. *See Heck*, 512 U.S. at 487 (the complaint "must be dismissed" if it is *Heck*-barred).

As stated earlier, *Heck* would not bar an alternative § 1983 action for damages where Slaughter solely challenges the dismissed aggravated battery charge and in no way implicates his forgery conviction or the sentence he is presently serving. But such

---

² The Court draws further support from the Seventh Circuit's broad interpretation of *Heck*'s applicability in other cases. In *Murphy*, a prisoner pleaded guilty to making a false statement, and later filed a § 1983 action arguing that he was coerced to answer the officers' questions that served as a basis for his false-statement conviction. 785 F.3d at 245. The Seventh Circuit held that Hill's claim was barred by *Heck. Id.* The Court explained that *Heck* "was concerned not only with limiting collateral attacks on criminal judgments, but also with the unseemliness of conflicting judicial outcomes." *Id.* at 247-48.

> "Imply" is not synonymous with "invalidate." A judgment in favor of Hill's claim in this civil suit that his conviction of making a false statement was unconstitutional because it rested on police coercion would not invalidate the conviction, or provide a ground for a suit for postconviction relief (release from prison), but it would cast a shadow over the conviction. It would allow Hill to argue that he had been determined by a court to have been unjustly convicted and sentenced but was forbidden to obtain relief on the basis of that finding. It would thus enable him to indict the legal culture. This Heck forbids. As we put it in *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir.2008), "a § 1983 claim for a due process violation based on the denial of a fair criminal trial may be brought only after the conviction is set aside. Otherwise, that civil claim would imply the invalidity of the outstanding conviction and would thus constitute a collateral attack on the conviction through an impermissible route." It would not be a collateral attack in the literal sense, because a judgment in favor of the plaintiff would not invalidate his conviction. But the implication of invalidity would be enough to establish the impropriety of the civil suit. Hill thus can't be permitted in his civil suit to prove that his first statement was coerced, though he can complain about the beating or threats or other brutalities that induced the three statements to the extent the brutalities inflicted injuries (whether physical or mental) for which tort damages can be awarded.

*Id.* at 248.

an action could only proceed if Plaintiff could state a claim for false arrest against Officer England. The Court finds that Plaintiff has failed to state a false arrest claim against Officer England and this claim is therefore dismissed with prejudice.

"To prevail on a false-arrest claim under § 1983, a plaintiff must show that there was no probable cause for his arrest." *Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016). The Court must thus decide whether Slaughter has adequately pleaded lack of probable cause.

"An officer has probable cause to arrest if 'at the time of the arrest, the facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* (quoting *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012)). "Probable cause requires more than a bare suspicion of criminal activity, but it does not require evidence sufficient to support a conviction." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 679 (7th Cir. 2007) (citing *Woods v. City of Chicago,* 234 F.3d 979, 996 (7th Cir.2000)). "Probable cause is assessed objectively: a court looks at the conclusions that the arresting officer reasonably might have drawn from the information known to him rather than his subjective reasons for making the arrest." *Id.* The probable cause "determination depends on the elements of the underlying criminal offense." *Id.* (citing *Stokes v. Bd. of Educ.*, 599 F.3d 617, 622 (7th Cir. 2010)). Slaughter was charged with the offense of aggravated battery in violation of 720 ILCS 5/12-3.05(d)(11). The statute provides in relevant part that "[a] person commits aggravated battery when, in committing a battery, other than by discharge of a

16

firearm, he or she knows the individual battered to be" "[a] nurse while in the performance of his or her duties as a nurse." 720 ILCS 5/12–3.05(d)(11) (West 2014).

Slaughter has failed to adequately plead that Officer England lacked probable cause to arrest him for aggravated battery. Slaughter specifically states that nurse Rutledge told Officer England that Slaughter hit him several times and chased him into an exam room. (Doc. 6 at 5). He also alleges that Officer England reviewed the emergency room surveillance video and corroborated Rutledge's claim in his police report. *Id.*

Slaughter contends that such information was false, that Rutledge was the initial aggressor, and that the surveillance video proves his innocence. But whether Slaughter was innocent and whether Rutledge was the initial aggressor has no bearing on the ultimate determination of probable cause in this case. The question is whether at the time of the arrest, the facts and circumstances within Officer England's knowledge were sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that Slaughter committed, was committing, or was about to commit an offense. A nurse's statement that a patient has hit him several times, corroborated by surveillance film, is certainly sufficient to warrant a prudent person in Officer England's position in believing that Slaughter committed the offense of aggravated battery.

"In making a decision to arrest someone for criminal conduct that he did not witness, a police officer may rely on information provided to him by the victim or by an eyewitness to the crime that the officer reasonably believes is telling the truth." *Holmes*, 511 F.3d at 680 (citing *Pasiewicz v. Lake County Forest Preserve Dist.,* 270

17

F.3d 520, 524 (7th Cir.2001) *and Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir.1986)). "So long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest...." *Id.* (quoting *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir.1998)). Slaughter contends that Rutledge's allegations as relayed to Officer England were false. However, Slaughter's amended complaint fails to state that Officer England knew such allegations were false, and the pleadings do not indicate any reason why Officer England should have known such allegations were false. Without such allegations, Officer England was entitled to rely on the information provided to him by nurse Rutledge. After two attempts, Slaughter has failed to state a claim for false arrest against Officer England. Any further attempt would be futile. All other claims having been dismissed, an indemnification claim against the City of Peoria must also fail.

## Conclusion

For these reasons, the Motions to Dismiss (Docs. 22, 24, 27) are GRANTED and this case is DISMISSED WITH PREJUDICE. Plaintiff's Motion to Request Counsel (Doc. 9) and Motion for Evidence (Doc. 33) are DENIED as MOOT.

CASE TERMINATED.

Entered this 1st day of March, 2018.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
